**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Diane Russell, | No. CV-19-04341-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Kimberly Diane Russell's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act (the "Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 15, Pl. Br.), Defendant Social Security Administration Commissioner's Opposition (Doc. 17, Def. Br.), and Plaintiff's Reply (Doc. 18, Reply). The Court has reviewed the briefs and the Administrative Record (Doc. 14, R.) and now affirms the Administrative Law Judge's ("ALJ") decision (R. at 13–34).

**I.    BACKGROUND**

Plaintiff filed her Application on March 31, 2015, for a period of disability beginning on March 14, 2015. (R. at 16.) Plaintiff's claim was denied initially on June 23, 2015, and upon reconsideration on November 17, 2015. (R. at 16.) Plaintiff then appeared and testified at a hearing on January 19, 2016. (R. at 16.) On April 30, 2018, the ALJ denied

Plaintiff's claim. (R. at 13–34.) That decision became final on April 5, 2019, when the Appeals Council denied Plaintiff's request for review. (R. at 1–7.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: degenerative disc disease of the cervical spine, psoriatic arthritis, fibromyalgia, sinus bradycardia, asthma, sensorineural hearing loss, thyroid disorder status post thyroidectomy, and obesity. (R. at 19.)

Ultimately, the ALJ concluded Plaintiff is not disabled. The ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 20.) The ALJ also determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with some limitations, including: occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; never climbing ladders, ropes, and scaffolds; avoiding concentrated exposure to extreme temperatures, moisture, humidity, noise, and vibration; avoiding moderate exposure to irritants, including fumes, odors, dusts, gases, and poor ventilation; and avoiding all exposure to workplace hazards, including moving machinery and unprotected heights. (R. at 22.) Based on this RFC, the ALJ concluded Plaintiff is capable of performing her past relevant work as an administrative assistant and hotel assistant manager. (R. at 27.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is

more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

III. ANALYSIS

Plaintiff raises three issues for the Court's consideration: (1) the ALJ erred by rejecting her symptom testimony; (2) the ALJ erred by rejecting the opinion of examining physician Dr. Carolyn Pace; and (3) the ALJ erred by assigning great weight to the opinion of state agency reviewer Dr. D. Rowse. The Court finds that the ALJ did not commit reversible error and therefore affirms her decision.

> **A. The ALJ properly rejected Plaintiff's symptom testimony because she provided specific, clear, and convincing reasons that are supported by substantial evidence.**

Plaintiff produced hearing testimony and function reports attesting to the severity and persistence of her pain and limitations. She alleged that her impairments limit her to standing for approximately 10 to 20 minutes at one time and walking approximately one-half block to two blocks at one time. (R. at 119, 306, 333.) The ALJ rejected Plaintiff's testimony for two reasons: (1) the objective medical evidence does not support the alleged severity of her limitations; and (2) Plaintiff's daily activities were inconsistent with her alleged limitations. (R. at 23–25.) The Court finds that the ALJ's rationale was sufficient.

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ may properly consider whether the record includes objective medical evidence to support certain symptom testimony, but that cannot form the sole basis for rejecting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ may also consider the claimant's daily activities, inconsistencies in testimony, and effectiveness of any treatment. *Id.* Where the ALJ makes specific findings that are supported by substantial evidence in the record, the Court will not disturb those findings, even if other rational interpretations of the evidence exist. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

**1. The objective medical evidence does not support the alleged severity of Plaintiff's pain and limitations.**

The ALJ's finding that the medical record does not support the alleged severity of Plaintiff's limitations is supported by substantial evidence. The ALJ first considered diagnostic imaging that showed some abnormalities, though not to the extent Plaintiff alleged. For example, MRI scans from March 2016 and January 2017 indicated Plaintiff was suffering from degenerative disc disease of the cervical spine and mild stenosis. (R. at 23.) A February 2016 x-ray of Plaintiff's lumbar spine was unremarkable. (R. at 23.) The ALJ also considered Plaintiff's physical examinations, which frequently reflected normal strength, normal range of motion in Plaintiff's extremities, and normal gait. (R. at 24.) Additionally, despite suffering from fibromyalgia—a diagnosis that largely relies on a claimant's subjective reports of pain—Plaintiff frequently reported no joint or muscle tenderness. (R. at 401, 407, 692, 696, 709, 714, 718.)

Regarding Plaintiff's sinus bradycardia, the ALJ noted Plaintiff's treatment providers determined she was asymptomatic. (R. at 772.) Furthermore, the record did not contain evidence of syncope. (R. at 24.) Regarding Plaintiff's asthma, her treatment providers found that the condition was mild and intermittent without complication, and Plaintiff reported she stopped using an inhaler in approximately 2010. (R. at 24.) Plaintiff also complained of an auditory impairment, but the ALJ found that by April 2015, Plaintiff reported her symptoms of vertigo had resolved and her only ongoing symptom was mild hearing loss. (R. at 24.) Finally, with regard to Plaintiff's hypothyroidism, the ALJ noted laboratory testing indicated Plaintiff suffered from a thyroid disorder, but her T4 levels were regularly in the normal range and her treatment providers found she was asymptomatic. (R. at 24.) In February 2017, a nodule was discovered on Plaintiff's left thyroid gland, but in March 2017, it was removed and found to be benign. (R. at 24.)

Plaintiff argues the ALJ failed to explain how these objective findings undermine specific portions of Plaintiff's testimony (Pl. Br. at 19–20), but the Court disagrees. The ALJ was not required to systematically discuss Plaintiff's testimony and the relevant

medical evidence. Instead, she was permitted to consider Plaintiff's testimony and determine, generally and with reference to specific records, that the objective evidence showed Plaintiff was more functional than alleged. The ALJ did that here, and the Court is therefore permitted to draw reasonable inferences concerning her findings. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). Though the objective evidence may support an interpretation more favorable to Plaintiff, the Court finds the ALJ's interpretation was rational and therefore upholds her decision. *See Burch*, 400 F.3d at 680–81.

### 2. **Plaintiff's daily activities are inconsistent with the alleged severity of her limitations.**

The ALJ also considered Plaintiff's daily activities and determined they were inconsistent with her alleged limitations, and the Court agrees. An ALJ may properly discredit a claimant's testimony if her daily activities are incompatible with the alleged severity of her symptoms. *See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

The ALJ considered Plaintiff's daily attendance at narcotics anonymous ("NA") meetings. (R. at 25.) During the hearing, Plaintiff testified that she sometimes attends two NA meetings per day, which are an hour long each. (R. at 120.) She testified that she does not sit during the meetings because she hands out key tags. (R. at 120.) The ALJ determined Plaintiff's engagement in daily NA meetings reflected a degree of activity that was incompatible with her alleged functional limitations—namely that she could not stand or sit for more than 20 minutes at a time (R. at 25)—and the Court agrees.

Similarly, the ALJ noted that Plaintiff reported grocery shopping approximately one hour per week, and that the record contains no evidence of difficulty ambulating or that Plaintiff uses an assistive device. (R. at 25.) The record also contains reports of Plaintiff walking and doing yoga, activities the ALJ found inconsistent with Plaintiff's testimony that she cannot walk more than two blocks at a time. (R. at 25, 660.) Though Plaintiff testified that she rides in a cart while grocery shopping (R. at 121), she denied using that type of assistive device on three previous occasions. (R. at 307, 334, 478.) Testimony that

contradicts the medical record "is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Because there is inconsistent evidence about whether Plaintiff uses an assistive device, the ALJ properly rejected her testimony.

The ALJ identified other activities that were purportedly inconsistent with Plaintiff's alleged functional limitations. However, the Court finds that the ALJ improperly relied on these activities without developing the record as to the extent to which Plaintiff engages in them. *See Zavalin v. Colvin*, 778 F.3d 842, 848 (9th Cir. 2014). For example, the ALJ noted Plaintiff provides support for twelve NA sponsees and worked as a life coach between 2013 and 2017. (R. at 25.) However, the record does not describe Plaintiff's responsibilities in those roles. The ALJ also noted Plaintiff sits on her front porch and reads every morning, which conflicts with her testimony that she cannot sit for longer than 20 minutes at a time. (R. at 25.) However, the ALJ did not determine how much time Plaintiff spends reading or whether she alternates between sitting and standing. Without further clarification, the Court finds that these activities are not particularly probative of Plaintiff's functional capacity. Finally, the ALJ noted Plaintiff cares for pets and has no difficulty grooming, performing household chores, or preparing food for herself. (R. at 25.) However, the Court finds that the ALJ mischaracterized Plaintiff's alleged ability to perform those activities, as the record reflects that she often has a friend or hired help assist with laundry and pet care, and she has some difficulty with other chores and self-care. (R. at 120, 303–04, 330.)

Nevertheless, the Court finds that substantial evidence supports the ALJ's overall conclusion that Plaintiff's daily activities are inconsistent with her alleged limitations. While a few of the ALJ's reasons supporting her adverse credibility finding are improper, such error is harmless as long as substantial evidence supports her findings on credibility and the errors do not negate the validity of her ultimate disability determination. *See Carmickle*, 533 F.3d at 1162. Though the evidence may support a finding more favorable to Plaintiff, the Court finds that the ALJ's interpretation was reasonable and supported by

substantial evidence and therefore upholds it. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

### B. The ALJ properly considered the medical opinion evidence.

Plaintiff next argues that the ALJ erred in weighing the medical opinion evidence. Specifically, Plaintiff argues that the ALJ erroneously assigned little weight to examining physician Dr. Carolyn Pace and great weight to state agency reviewer Dr. D. Rowse. The Court finds the ALJ did not err in weighing these opinions.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, a treating physician's opinion should be given controlling weight, and an examining physician's opinion should be given greater weight than a nonexamining physician's opinion. *Id.*

The ALJ may only reject a treating or examining physician's contradicted medical opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle*, 533 F.3d at 1164. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

#### 1. The ALJ properly discredited the opinion of Dr. Carolyn Pace, the examining physician, by providing specific and legitimate reasons that are supported by substantial evidence.

Dr. Pace, the consultative examining rheumatologist, examined Plaintiff in July 2016. (R. at 532–39.) She opined Plaintiff would have difficulty sitting and standing for

longer than 10 minutes at a time; would be unable to walk for longer than five minutes at a time; would be unable to use her upper extremities for work activities; and would need access to a bed during the day to rest at will. (R. at 536–37.) She also opined Plaintiff would have difficulty consistently working a full eight hours due to the pain and fatigue caused by her fibromyalgia, and the unpredictable and recurrent nature of her flareups would make it difficult for her to maintain consistent attendance at work. (R. at 537.)

The ALJ rejected Dr. Pace's opinion because: (1) it was inconsistent with the evidence of record, including the medical records and Plaintiff's daily activities; (2) it included opinions about Plaintiff's mental and behavioral health, which is outside the scope of Dr. Pace's expertise; (3) it was based on a one-time examination requested by Plaintiff's counsel; (4) she did not indicate whether she considered the longitudinal evidence of record; and (5) she referenced a report that was not provided to the ALJ.[1] (R. at 25–26.) The Court finds the ALJ's rationale was sufficient.

The ALJ properly rejected Dr. Pace's opinion on the basis that it was inconsistent with the objective medical evidence. If a physician's opinion is brief, conclusory, or inadequately supported by clinical findings, the ALJ need not accept it. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The functional limitations Dr. Pace opined to are similar to—if not more restrictive than—the limitations Plaintiff alleged. Because the Court previously determined the ALJ properly discredited Plaintiff's testimony, it need not reconsider that evidence in the context of Dr. Pace's similar opinion.

The ALJ also properly considered Dr. Pace's specialization in determining how much weight to afford her opinion. Dr. Pace, a rheumatologist, opined about Plaintiff's physical and mental impairments. (R. at 532–39.) The ALJ found that Dr. Pace was not qualified to opine about the effect of Plaintiff's mental impairments on her ability to function in a work setting. (R. at 26.) Plaintiff urges that the ALJ is required to consider the combined effect of her mental and physical impairments on her ability to work, and

---

[1] Neither party addresses this reason, and the Court will not address it either since the ALJ provided other sufficient reasons for rejecting Dr. Pace's opinion.

that any qualified medical doctor is permitted to give an opinion to that effect. (Pl. Br. at 12.) This overstates the ALJ's obligation. When evaluating how much weight to afford a medical opinion, the ALJ should consider, among other factors, the nature and extent of the treating relationship. 20 C.F.R. § 404.1527(c). If a *treating* physician has knowledge about an impairment that falls outside the scope of her practice, she may otherwise be qualified to opine about its effects given her unique relationship with the claimant. *Lester*, 81 F.3d at 833. Dr. Pace, an examining physician who observed Plaintiff on one occasion, was not in a position to offer a particularly credible opinion on the combined effect of Plaintiff's physical and mental impairments. Therefore, the ALJ did not err by discounting Dr. Pace's opinion on this basis.

The ALJ's remaining reasons for rejecting Dr. Pace's opinion were insufficient, but her erroneous reliance on them was harmless. *See Carmickle*, 533 F.3d at 1162. The ALJ found Dr. Pace's opinion less credible because it was based on a one-time examination and requested by her lawyer. (R. at 26.) This was error. Though limited observation is a valid reason to give less weight to an examining physician's opinion than a treating physician's opinion, that logic does not extend to credit a nonexamining physician's opinion over that of an examining physician. *See Lester*, 81 F.3d at 832. Moreover, "[a]n examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." *Id.* The ALJ also found Dr. Pace's opinion less credible because she did not state whether she reviewed the longitudinal treatment record. (R. at 26.) However, there is no requirement that an examining physician explicitly state what evidence she relied on.

Despite the two erroneous reasons the ALJ gave for rejecting Dr. Pace's opinion, the Court finds substantial evidence supports her decision and therefore upholds it.

> **2. The ALJ properly assigned great weight to the opinion of Dr. D. Rowse, the state agency reviewer.**

Dr. D. Rowse, a state agency nonexamining physician, examined Plaintiff in May 2015. (R. at 142–45.) Dr. Rowse opined Plaintiff would be "limited to light exertional

activities, limited frequency of postural maneuvers, and limited exposure to environmental conditions." (R. at 25.) The ALJ gave this opinion great weight because it was "consistent with the evidence of the combined effect of the claimant's musculoskeletal disorders, thyroid condition, and obesity." (R. at 25.)

Plaintiff first argues Dr. Rowse's opinion was entitled to less weight because it was based on an incomplete record. (Pl. Br. at 14–17.) The Court is not persuaded by this argument. When determining how much weight to afford a medical opinion, the ALJ should consider, among other things, the timing of the opinion. 20 C.F.R. § 404.1527(c)(3). Thus, Dr. Rowse's opinion is not discreditable merely because it was proffered in 2015. Here, the ALJ found the opinion was consistent with the medical evidence, and her decision is supported by substantial evidence in the record, as discussed in Section III.A.1.

Plaintiff also argues that the ALJ improperly usurped the role of a physician to determine whether the medical evidence supports Dr. Rowse's opinion. (Pl. Br. at 14.) The Court disagrees. The ALJ is responsible for resolving conflicts in the medical record, including the opinion evidence. *Carmickle*, 533 F.3d at 1164 (citing *Lester*, 81 F.3d at 830–31). Substantial evidence supports the ALJ's decision to give Dr. Rowse's opinion great weight, and she is therefore entitled to deference.

In sum, the Court finds that the ALJ properly considered the opinions of Dr. Pace and Dr. Rowse. Substantial evidence supports her reasons for according them minimal and great weight, respectively, and the Court therefore upholds her findings.

**IT IS THEREFORE ORDERED** affirming the April 30, 2018 decision of the ALJ. (R. at 13–34.)

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 27th day of April, 2020.

Honorable John J. Tuchi
United States District Judge